604 So.2d 425 (1992)
I.L.
v.
L.D.L., Jr.
2910053.
Court of Civil Appeals of Alabama.
July 31, 1992.
*426 Paul D. Brown, Mobile, for appellant.
John W. Cowling, Mobile, for appellee.
PER CURIAM.
The parties were divorced on November 26, 1990, and custody of the one-year-old child of the parties was awarded to the mother subject to specified visitation of the father. The father was ordered to pay $176 per month for child support.
On January 17, 1991, the father filed a "motion for rule nisi," alleging that the mother had interfered with his visitation rights by refusing to allow him to pick up the child on the times specified in the divorce decree. The mother filed a motion to dismiss, followed by a motion to suspend visitation privileges temporarily, in which she alleged that, because of evidence of sexual abuse and inappropriate behavior of the child, the Mobile County Department of Human Resources (DHR) was investigating the case. The father's rights of visitation were temporarily suspended until the hearing on the motion for rule nisi. The trial court entered an order resetting the case for hearing and ordering DHR to conduct an investigation into both home environments and to submit a report to the court prior to the reset date. The father was allowed supervised visitation.
The mother then filed a motion to modify child support. The hearing was again reset, and the father filed a motion to compel, requesting that the trial court issue an order compelling the DHR representative to submit her report to the court on or before the hearing reset for July 9, 1991. The motion was granted, and the representative was ordered to submit her report on or before July 5, 1991.
After hearings on July 9 and July 11, 1991, the trial court ordered supervised visitation for the father with the child on July 15 and 16, 1991, and further affirmed the visitation as set out in the judgment of divorce, ordering that the parties cooperate with each other due to the father's serving in the armed forces. The mother appeals, contending that it was an abuse of discretion to reinstate unsupervised visitation of the father. We agree and reverse and remand.
At the outset we note that while a trial court has broad discretion when determining visitation rights of a noncustodial parent, each case requires an examination of the facts and circumstances of that individual situation. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). Furthermore, the primary consideration in establishing visitation rights for the noncustodial parent must be the best interests and welfare of the child. Brothers v. Vickers, 406 So.2d 955 (Ala.Civ.App.1981). The trial court's judgment awarding visitation will be reversed only when there has been an abuse of the trial court's discretion. Jackson v. Jackson, 520 So.2d 530 (Ala.Civ.App. 1988).
The father testified that he had been in the army for four months and that he was married to the mother for approximately two years. He filed the motion for rule nisi because the child was not available to him during his visitation times. He particularly objected to not being able to have the child before nighttime on her birthday. He stated that he would never hurt, physically abuse, or molest the child and that, although he worked in facilities with children where he was trusted not to engage in improper behavior, he has never before had such accusations made against him. He stated that the allegations were fabricated. He claimed that he was current with child support payments and that his income is approximately the same since he entered the military as it was before.
*427 The mother testified to the following: When the child was one-year-old, the mother suspected an abuse problem because of the way that the child was acting, and she took her to the pediatrician. The pediatrician told the mother not to worry if the child was not "ripped and torn." After the divorce the mother again noticed inappropriate behavior by the child after the child returned from her weekend visitation with her father. She took the child to the pediatrician, who called in a nurse-specialist from the abuse clinic.
On the morning after the next weekend visitation, the mother took the child back to the pediatrician. The pediatrician called the Child Advocacy Center (Center) and the Department of Human Resources (DHR). The child was counseled at least twelve times by a certified clinical psychologist at the Center. The mother also went to group counseling so that she would be able to help the child. She filed her motion to suspend visitation in response to what she was told by a health care professional.
In describing the child's conduct since the divorce, the mother stated that the child has been very scared of men with beards and that the father used to have a beard. At first the child would stick things near her vagina and place her finger in her mouth and say "Daddy do this, Momma. Daddy do it." Then the child would touch her vaginal area and say "Daddy pee pee, Mommy." The child would wake up screaming in the middle of the night and would not let anyone touch her. This behavior has subsided.
The mother, whose income is $700 per month, testified that her expenses for the child have increased and that she has been told that the child will need counseling for the rest of her life.
The maternal grandmother testified that prior to the divorce the child had nightmares and that she never wanted to be left alone with her father. She further stated that after the divorce the child would scream, kick, and shut the door in her father's face, saying "no, Daddy, no, no, no." She further testified that "[w]hen [the child] returned from visitation, she laid in the floor and grabbed herself in the groin and said Daddy, ma. Daddy do, ma. She stuck her finger in her mouth and shoved it back and forth and said daddy, ma, daddy."
A social worker in a protective services capacity with DHR testified to the following: DHR does have a concern for the child and recommends that the child's visitation with the father be supervised. The father did not cooperate with the investigation into his living conditions, as he did not want her to talk to the people with whom he lived. She did not complete the investigation of the father's home, which was in another county, and then he joined the military. She needs to reinterview the father because of new information in her report to the court that was received from the child psychologist. Although the social worker asked the father's attorney to have the father contact her as soon as he arrived from his military service, the father did not contact her.
The report of the psychologist gave the social worker more "reason to suspect." Some of her conclusions are based on an interview with the child. She was unable to totally assure the court that information obtained from a two-and-one-half-year-old child would be accurate.
The social worker submitted a report to the trial court that included the following: In an interview the maternal grandfather stated that he had been concerned about the father since the child was eight or nine months old and that he noticed the father taking an excessive amount of time to change the child's diapers. He stated that he saw the child sit on a metal turtle doorstop and rub herself on it, and he found this action very upsetting. In addition, the psychologist told the social worker that
"the [child] had told her additional information and made a disclosure of sexual abuse by her `Daddy' to [the psychologist] during several counseling sessions. The sessions began in March. According to [the psychologist], the child picked up the anatomical doll she called `daddy' and said `daddy's peepee' and put it in her mouth. Each time the child comes to *428 counsel with [the psychologist] she asks for the `Nonnie doll' and `Daddy doll.' When the child stuck the `pee pee' in her mouth, she says `Yuk.' [The psychologist] asked the child, `Your daddy'? and [the child] said `Yes.'"
The social worker further stated in the report that she planned to talk to the child again but that she had not yet done so. She found her separate interviews with family members and others to be believable.
A resident advisor and the father worked together for approximately one year in a program which counsels boys ages fourteen to eighteen with problems ranging from alcoholism to sexual abuse and dysfunctional families. The advisor testified that he never saw the father exhibit any inappropriate behavior toward the children and that he did not believe that the father would sexually molest the child.
Another resident advisor, who worked with the father and also supervised his visitation with the child on one occasion, stated that he never saw the father behave improperly toward any of the children and that the opportunity to molest them would have been there. He did not believe that the father would abuse his child.
A friend of the father's, in whose home the father had lived prior to entering the military service, testified that the DHR social worker had never contacted him to ask about the father's living environment. He did not believe that the father was capable of molesting the child and never saw any inappropriate behavior or contact by the father or by the child when the child was at his home for visitation.
The trial judge stated at the hearing that he did not have much confidence in reports and that "this is the sort of thing you ought to have worked out between yourselves." He further stated that he has "problems with people who draw conclusions about what two and one-half or two-year-old children say or do."
The mother contends that, because the father was a suspect in a pending investigation of child abuse, the trial court abused its discretion by reinstating unsupervised visitation. She claims that the home evaluation report contained a factual basis for DHR's recommendation for continued supervised visitation until the report and the investigation are complete. She further states that the primary consideration in visitation rights is the best interests and welfare of the child.
The father responds that the trial court's judgment may not be reversed unless it has abused its discretion in setting visitation rights. He further states that the trial court has wide latitude in the evidence it will consider and that, because the report of the social worker was not submitted until the day of trial, the father had no opportunity to review the report or to prepare a response to its allegations.
As stated above, the primary concern of the trial court in establishing visitation rights for the noncustodial parent must be the best interests and welfare of the child. Brothers, 406 So.2d 955. Considering the evidence presented regarding the behavior of the child and the incomplete investigation, we find that granting unsupervised visitation to the father at this time is not in the child's best interests. Therefore, we hold that the trial court abused its discretion by affirming the visitation as set out in the divorce decree. The trial court's judgment is reversed, and the cause is remanded for the trial court to enter an order that visitation by the father be supervised.
Both parties request attorney fees for representation on appeal. These requests are denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.